UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X
SHEILA BROWN,                                                          Index #: 11CV2915(PAE)(JLC)
                              Plaintiff,


                    -against-


THE CITY OF NEW YORK et.al

                              Defendants.
--------------------------------------------------------X




## PLAINTIFF'S PROPOSED JURY INSTRUCTIONS




                                        Ismail S. Sekendiz, Esq (IS-0509)
                                        SEKENDIZ LAW FIRM P.C.
                                        Attorneys for Plaintiff
                                        45 Broadway Suite: 2650
                                        New York, New York 10006
                                        Tel: (212) 380-8087

2

Plaintiff SHEILA BROWN respectfully submits the following proposed instructions to the jury for consideration by the Court, based upon the evidence Plaintiff presently expects will be presented at trial.  With the Court's permission, Plaintiff wishes to respectfully reserve the right to supplement these instructions at the close of the evidence if unanticipated factual issues have arisen during the course of trial.

INTRODUCTORY REMARKS

1.      Ladies and gentlemen of the jury, I am now about to instruct you on the law that you will apply to the facts in this case.  You will then perform your most important function.  You will determine the facts in accordance with my instructions on the law.

2.      Before I begin, I repeat my thanks and that of the parties for your patience and attention.  We recognize the personal inconvenience you undergo to serve and extend, again, our appreciation for the important service you render to the administration of justice.

3.      You have now heard all of the evidence in this case as well as the final arguments of the lawyers for the parties.  We have reached the point where you will undertake your final function as jurors.  You have paid careful attention to the evidence, and I am confident that you will approach your deliberations with the same patience you have displayed thus far and that you will act with fairness and impartiality to reach a just verdict.

4.      My duty is to now instruct you as to the law, and your duty is to accept my instructions and apply them to the facts as you determine them.  You should not single out any instruction as alone

3

stating the law.  All of my instructions are equally important and you should consider them as a whole when you deliberate.

5.      You also should not be concerned about the wisdom of any rule that I state.  Regardless of any opinion that you may have as to what the law may be -- or ought to be -- it would violate your sworn duty to base a verdict upon any other view of the law than that which I give you.  If any attorney has stated a legal principle different from any that I state to you in these instructions, it is my instructions that you must follow.  You must not be influenced by any personal likes or dislikes, opinions, prejudices or sympathy.  That means that you must decide the case solely on the evidence before you and according to the law, as you gave your oath to do at the beginning of the case.  The result of your work will be the verdict that you return.  If we both perform our functions properly, then justice will have been served no matter what verdict you return.

3 Sand, Siffert, Reiss, Sexton & Thrope, Modern Federal Jury Instructions (1990), Instruction 71-2, Modified. [Hereinafter öSandö]; The Patapsco Ins. Co. v. Southgate, 30 U.S. 604, 621, 8 L.Ed. 243 (1831); Franks v. United States Lines Co., 324 F.2d 126 (2d Cir. 1963);3 Sand ¶ 71.01

6.      As members of the jury, you are the sole and exclusive judges of the facts.  You pass upon the evidence.  You determine the credibility of the witnesses.  You resolve such conflicts as there may be in the testimony.  You draw the reasonable inferences to be drawn from the evidence, or lack of evidence.  In determining these issues, no one may invade your province or functions as jurors.  In order for you to determine the facts, without bias or prejudice in favor of, or against, any party.

4

7.     Since you are the sole and exclusive judges of the facts, I do not mean to indicate any opinion as to the facts or what your verdict should be.  During the trial I have been called upon to make rulings on various questions. There may have been objections, or motions may have been made to strike answers. You are to disregard the reason for these matters. You are to disregard the fact that an objection was made and sustained or overruled or that conferences took place.  The rulings I have made during the trial are not any indication of my views of what your decision should be.  These are matters of law and, although you may have been curious about them, you should not consider them. Of course, if at any time I instructed you to disregard anything that was said, then you must follow that instruction and pay no attention to that question or answer in your deliberations.

8.     I also ask you to draw no inference from the fact that upon occasion I made comments, asked questions of certain witnesses, or said something to one or both of the attorneys.  These comments, questions and statements were only intended for clarification or to expedite matters, and certainly were not intended to suggest any opinions on my part as to the verdict you should render, or whether any of the witnesses may have been more credible than any other witnesses.  From time to time, the attorneys and I may also have had sidebar conferences and other conferences out of your hearing. None of these conferences should enter into your deliberations at all.  You are expressly to understand that the court has no opinion as to the verdict you should render in this case.

3 Sand 71-3 (Modified); 3 Sand ¶ 71.01

9.     With regard to any factual matter, your recollection and your recollection alone governs.

5

Anything that counsel for either Ms. BROWN or the Defendant may have said with respect to matters in evidence, whether while questioning witnesses or in argument, is not to be substituted for your own recollection or evaluation of the evidence. So, too, anything that I may have said during the trial or may say during these instructions as to any factual matter is not to be taken in place of your own recollection or judgment.

3 Sand ¶ 71.01

II.      OVERVIEW OF THE CASE

10.      As I indicated to you during jury selection, and as you yourselves heard extensively throughout this trial, this is a case in which the plaintiff, SHEILA BROWN, is suing his former employer, DEPARTMENT OF SOCIAL SERVICES/ THE CITY OF NEW YORK she alleged facts of this case are as follows:

11. This is a gender discrimination, sexual harassment case. Plaintiff has been employed by New York City Human Resources Administration Department of Social Services since 1990. Plaintiff¢s current title is a Supervisor. In or around May of 2007, Plaintiff¢s supervisor Jerry Victor assigned George Miller, a case worker to be Plaintiff¢s subordinate on the condition that Plaintiff would supervise George Miller¢s time and leave. Prior to this assignment, George Miller was fired from his position with the City for sexually harassing female employees including Kenya Heyliger and Judith Smith. The defendants agreed to settle a grievance that was filed by George Miller agreeing to take George Miller

6

back awarding him of his six months back pay. Plaintiff was responsible for reviewing George Miller's work. Immediately after Plaintiff learned that her supervisor Jerry Victor was going to be assigning George Miller to her, she informed Jerry Victor that George Miller was very aggressive towards women and that he does not listen to women. Plaintiff further advised her supervisor that George Miller was arrested on couple of occasions and that Plaintiff was fearful of her safety. Plaintiff further told Jerry Victor that George Miller would respect men only. Plaintiff's supervisor Jerry Victor disregarded Plaintiff's complains and assigned George Miller to the Plaintiff. Starting from May of 2007, George Miller would on a daily basis harass and discriminate against Plaintiff. More specifically, he would say "I do not take orders from Women." "Men should be in the men's place and women should be in the women's place" "You cannot tell me anything because you are a woman. Only Jerry can tell me what to do." In around September of 2007, George Miller became very angry, walked into the kitchen area and started punching the kitchen cabinets and screaming that he wanted his full pay check and not half of it. Director Jerry Victor refused to send George Miller home and he asked security guards to leave despite Plaintiff's complains. George Miller would touch Plaintiff's hands and gave her a bear hug in a sexual manner on an ongoing basis. In or about December of 2008, Plaintiff received a phone call from Natasha Sebastian, who indicated that George Miller had an appointment with special investigation unit and that he did not swipe the auto time card to show and that he was being investigated for being arrested. Ms. Sebastian told Plaintiff that she (Plaintiff) must enter George Miller's time and leave in the system. Plaintiff then discussed George Miller's behavior towards women with Natasha Sebastian. Natasha Sebastian told Plaintiff that George Miller was disrespectful against her and that he was staring at her during an interview. On or around June 30, 2008 Jerry Victor gave a document that was related to George Miller to the Plaintiff and asked her to

keep a separate folder for George Miller. Plaintiff objected and once again informed Jerry Victor that George Miller was very aggressive towards women and that he would touch Plaintiff's hands and stare at case workers in a sexually suggestive manner and that Plaintiff did not want to do anything related to George Miller. As usual, Jerry Victor said nothing and walked away from Plaintiff. George Miller would also look at females employees in sexual manner throughout his employment with the City. Plaintiff felt extremely uncomfortable for the stares that George Miller was giving to the female employees in the office. Plaintiff complained to Jerry Victor but he refused to take any actions against George Miller. Jerry Victor never disciplined or reprimanded or otherwise warned George Miller for his rude and aggressive behavior towards women.  On May 21, 2009 Plaintiff entered Jerry Victor's office to discuss a case on which a co-worker refused to work on with the client. Jerry Victor interrupted Plaintiff and told her that Plaintiff was a terrible manager and that she had to leave the unit. Plaintiff told Jerry Victor that that George Miller was touching plaintiff and staring at women. Jerry Victor turned his office desk chair around showing Plaintiff the back of his office chair. In or around November of 2009, a supervisor position became available at the DOPIS-APS division. Jerry Victor disguised the job vacancy notice and hired, Tim Comer, a male caseworker without informing the staff members of the availability of a vacant position. Despite the fact that Plaintiff qualified for the position and that she was the only social worker in the unit with a master's degree, she was not given an opportunity to apply to the position. Plaintiff was not also given an opportunity to apply for the vacant position in retaliation of her complains against George Miller.  Hence, Plaintiff was not paid for her differential. Upon information and belief Jerry Victor favored male employees over female employees. George Miller would frequently hug Plaintiff. In or around March 2010, female co-workers on 6th and 7th floors informed Plaintiff that George Miller was talking about "How he never

8

had sex in a long time and that he would like to have sex with a particular female. Whenever Plaintiff

wanted to remind George Miller that he had to listen to what Plaintiff has to say due to the fact that

Plaintiff was responsible of George Millers' time and leave, George Miller would scream and make

strange noises. George Miller would frequently tell Plaintiff that he was a "Macho" and that women

must listen to him.  Whenever Plaintiff had to give some documents to George Miller or vice versa,

George Miller, against Plaintiff's will, would touch and hold Plaintiff's hands.  George Miller would

frequently dance in the hallways. George Miller would, on a daily basis, wear music headphones

(majority of the day) and talk/rap loud lyrics such as gun shots. George Miller would frequently use

profane language at work.  On a weekly basis, George Miller would start screaming out of the blue

while he is in the office. George Miller would say: "Oh. She does not love me. I am in love with her. I

don't know what to do" Plaintiff would fear of her own safety and felt discriminated against. Plaintiff

would, on a weekly basis, complain to Jerry Victor about the daily harassment that she was exposed

to by George Miller but Jerry Victor would refuse to take any precautions against George Miller.

George Miller would frequently and in an intimidating manner tell Plaintiff that he had "Seven-

Georges" among some of which are as follows:  "The Party George; The Good George; The Bad

George; The Girl George; and the Killer George." making Plaintiff fear of her own safety. On one

occasion, in or around early 2009, George Miller told Plaintiff that all of his assignments are approved

by the unit director, Jerry Victor, who is a male and that he had nothing to review with the Plaintiff.

Plaintiff complained to Human Recourses Department of the defendants on December 31, 2009

concerning the harassment that she was being exposed to by George Miller and her supervisor Jerry

Victor. Towards the end of 2009, Three Female workers informed Plaintiff that George Miller would

greet them with a bear hug and would not let them go.  On or about January 29, 2010 some staff

members informed Plaintiff that they observed Mr. Miller crying at his desk, body shaking, pulling off

his clothes and begging for money. According to the staff members, money was collected from few

staff members and Mr. Miller left his office after his 3-hours sitting at his desk.  On or about March 5,

2010 a co-worker by the name of Valdine Dpeiza was grabbed, touched and sexually harassed by

George Miller. While Ms. Depeiza was standing, George Miller grabbed Valdine Depeiza tightly

around her waist and would not release her. When Ms. Depeiza pushed George Miller, he grabbed

Ms. Depeiza's chest. Approximately ten (10) minutes after the incident Ms. Depeiza was hit on the

shoulder while she was in her cubicle. When she turned around she saw George Miller, fully exposed

from waist down masturbating. Ms. Depeiza informed her supervisors Ms. Florance Graydon and

Darre Moriss of the incident and officially complained to Partick Tavarez of Human Resources

Administration of the Department of Social Services. Upon information and belief Barbara Mitchell, a

supervisor with the defendants came over and saw George Miller standing in the isle near the 8th

Floor conference room still visibly exposed and masturbating. Barbara Mitchell stated: "If I did not

see this with my own eyes I would not have believe it." On or about March 5, 2010 Barbara Mitchell

witnessed George Miller following Cherry-Ann Samuel into the Women's restroom trying to hold

Cherry-Ann's hand and pull her into the rest room.  Barbra Mitchell saw George Miller vigorously

flashing his penis while he was looking at her.  On or about March 8, 2010  Florance Graydon made a

complaint to Patrick Tavares, the director of APS Manhattan South indicating that George Millers'

sexual harassing behavior became a serious safety issue for women. At all times herein mentioned

George Miller was very aggressive towards females and due to his aggressive behavior, all tasks and

standards and instructions were administered through the Unit Director Jerry Victor, who is a male.

Plaintiff continued supervising George Miller for a period of seven months after George Miller

masturbated on the floor. In or around September of 2010 Plaintiff's supervisor Jerry Victor advised her that George Miller was expected to come back and Ms. Brown was still his supervisor, which than caused Plaintiff to file a complaint with the EEOC. Ms. Brown claims that she sustained emotional distress and lost her differential as a result of the sexual harassment and the discrimination.

12.    You may find for Ms Brown upon all of her claims, one or some of his claims, or none of her claims, all depending upon how you find the facts.  If you do find for her upon any of her claims, it will then be your duty to determine damages in accordance with the instructions I will give you in a few minutes.  It is important for you to return verdicts on Ms. BROWN's claims under each laws, even though the claims may overlap, and I will provide you with a Verdict Form for that purpose. You need not worry that, if you find that Ms. BROWN prevails on his claims under both sets of laws, she will receive a double recovery.  After you have returned your verdicts, I will see to it that a double recovery does not happen.

PLAINTIFF'S REQUESTS TO CHARGE

Plaintiff, SHEILA BROWN ("BROWN" or "Plaintiff") respectfully submits the following proposed instructions to the jury for consideration by the Court, based upon the evidence Plaintiff presently expects will be presented at trial.  With the Court's permission, Plaintiff wishes to respectfully reserve the right to supplement these instructions at the close of the evidence if unanticipated factual issues have arisen during the course of trial.

I.    BURDEN OF PROOF

1.    I will now describe to you what is called the "burden of proof."  From television,

11

books or movies you may have heard of something called proof beyond a reasonable doubt.  That is the standard, or burden, of proof in a <u>criminal</u> trial.  Since this is a civil trial, that requirement does not apply.  You should therefore put it entirely out of your mind.  The burden of proof in this case is called a preponderance of the evidence.

2.     A "preponderance of the evidence" simply means the greater weight of the evidence. The weight of evidence refers to the quality of the evidence, not to the number of witnesses, the number of documents, or the amount of time a particular side spent presenting its case.  It is the weight the evidence carries in your mind.  Put another way, to prove something by a "preponderance of the evidence" simply means to prove that it is more likely so than not so.

> 3 Sand 73-2 (Modified); 3 Devitt, Blackmar and Wolff, *Federal Jury Practice and Instructions*, §§ 72.02 (1987 & Supp. 1993) (hereinafter, "Devitt"); <u>New York Pattern Jury Instructions</u>, Second Edition ("PJI") 1:23

3.     To say that a party has the burden of proof on a particular issue means that, considering all the evidence in the case, the party's claim on that issue must be established by a preponderance of the evidence – the testimony, stipulations of fact, and documents – that you find worthy of belief.  In order for a party to prevail on an issue on which it has the burden of proof, the evidence that supports its position on that issue must appeal to you as more nearly representing what happened than the evidence opposed to it.  If it does not, or if it weighs so evenly that you are unable to say that there is preponderance on either side, you must decide the question against the party which has the burden of proof, and in favor of the opposing party.

4.     When I say in these instructions that a party has the burden of proof on any proposition, or use expressions like "if you find," or "if you decide," I mean you must be persuaded, considering all the evidence in the case, that the proposition is more probably true than not true.  In determining whether a claim has been proved by a preponderance of the evidence, you may consider the relevant testimony of witnesses, regardless of who may have called them, the relevant exhibits received in evidence, regardless of which side may have produced them, and any stipulated facts, as I may have identified them to you.

5.     You should also attach no significance to the fact that certain witnesses were called to testify by plaintiff or by defendant.  Nor should you attach any meaning to the fact that a document or other exhibit was introduced by one party rather than another.  Every party is entitled to the benefit of any evidence tending to support its arguments, even if such evidence came from witnesses or documents introduced by the other party.  This is true with respect to any contested issue of fact in the case.

> *Larson v. JoAnn Cab Corp.*, 209 F.2d 929 (2d Cir. 1954); 3 Sand 73-2

6.     In this case, the plaintiff, Ms.BROWN, claims that he was subjected to a hostile work environment on the basis of her gender and she was subjected to sexual harassment while she worked

12

for the defendants.  The defendants deny this.

7.     Ms.BROWN has the burden of proving that the Defendants created and/or maintained a work environment which was hostile toward her on the basis of his gender/sex, and that that environment caused her harm and that such harm caused her damages.  What constitutes hostile environment discrimination will be explained in a few minutes.

8.     So long as you find that the scales tip, however slightly, in favor of the party with the burden of proof on a particular disputed element, that element will have been proved by a preponderance of evidence.  If, after considering all the evidence on a claim, for example, you are satisfied that Ms.Brown has carried her burden on each disputed element of that claim, you must find for her, and against the Defendants, on that claim.  If after such consideration you find the evidence on both sides to be in balance or equally probable, or weighing more heavily in the Defendant's favor, however, then Ms.BROWN will have failed to carry her burden, and you must find for the Defendants on that claim.

9.     If you find that Ms.BROWN has carried her burden on a particular claim, you will then move on to considering the issue of damages.

10.     The same is true for the Defendants with respect to each of their affirmative defenses. The Defendant has the burden of proving every disputed element of each of their affirmative defenses to you by a preponderance of the evidence.  If you find that they have done so, you must find in their favor on that affirmative defense.  If you find that the evidence on both sides is in balance or equally probable, or that the evidence favoring Ms.BROWN is greater, you must find in favor of Ms. BROWN.

3 Sand 73-1 (Modified)

II.     WHAT IS, AND IS NOT, EVIDENCE GENERALLY

11.     The evidence in this case is the sworn testimony of the witnesses, both during trial and at deposition, the documents and other exhibits which have been received in evidence, and any facts which I have identified for you as either having been stipulated to by both sides, and having been judicially noticed.

12.     The questions asked by the attorneys are not evidence, nor the statements the attorneys made in their openings and summations. Objections, my rulings on those objections, and the various other arguments and statements made by the attorneys, or by me, during the trial are also not evidence.  Finally, testimony that has been stricken or excluded, and documents or other exhibits which have not been admitted into evidence are also not evidence, and are not to be considered by you in your deliberations, or in reaching your verdict in this case.

13.     The attorneys, on cross-examination, may have incorporated into a question a

statement which assumed certain facts to be true.  If the witness denied the truth of a statement, and if there is no direct evidence in the record proving that assumed fact to be true, then you may not consider it to be true simply because it was contained in the attorney's question.

14.     Also, if certain testimony was received for a limited purpose – such as for the purpose of showing a witness's state of mind – you must follow the limiting instructions I gave at the time that evidence was received.

15.     What the attorneys said to you in their opening statements and in their summations was intended simply to help you understand the evidence, but was not evidence itself.  If your recollection of the facts differs from what the attorneys said, you should rely upon your recollection, and not the attorney's statements.

16.     Exhibits which were marked for identification, but were not actually admitted into evidence also may not be considered, nor may materials which were used solely to refresh a witness' recollection.

17.     Finally, statements which I may have made concerning the quality of particular evidence do not constitute evidence.  It is for you alone to decide the weight, if any, to be given to the testimony you have heard and the exhibits you have seen.

3 Sand 74-1 (Modified)

## III.     DIRECT AND CIRCUMSTANTIAL EVIDENCE

18.     There are two types of evidence which you may properly use in reaching your verdict. One type of evidence is direct evidence.

19.     Direct evidence is testimony by a witness about something he knows by virtue of his own senses - something he himself has seen, felt, touched, or heard.  Direct evidence may also be an exhibit where the fact to be proved is its present existence or condition.

20.     Circumstantial evidence is evidence which tends to prove a disputed fact by proof of other facts.  A simple example of circumstantial evidence which is often used in this courthouse goes like this:  Assume that when you came into the courthouse this morning the sun was shining and it was a nice day.  Now assume that the courtroom blinds were drawn during the trial, so you could not see outside.  As the trial proceeded, someone walked into the courtroom with a dripping wet umbrella.  Then, a few minutes later, another person also entered with a wet umbrella.  Now remember, the blinds on the windows are drawn, so you can't see whether or not it is raining outside. So you have no direct evidence of that fact.  But because you saw two people walk into the courtroom with wet umbrellas, it would be reasonable and logical to conclude that it had indeed been raining outside.  Those wet umbrellas are circumstantial evidence of the fact that it is, or was, raining outside.  You infer on the basis of reason, your own experience, and common sense, from one established fact – that two people walked into the courtroom with wet umbrellas – the existence of

14

another fact ó that it is, or was, raining outside.

21.     Circumstantial evidence is of equal value to direct evidence.  The law generally makes no distinction between direct evidence and circumstantial evidence.  It simply requires that your verdict be based upon a preponderance of all the evidence, both direct and circumstantial, that has been presented.

3 Sand 74-2 (Modified)

## IV.    INFERENCES

22.     During the trial, you may have heard the attorneys use the word õinferenceö in their opening statements or summations, or you may have heard them ask you to infer, on the basis of your own experience and common sense, one or more facts, with the assistance of some other fact.

23.     An inference is not a suspicion or a guess.  It is a reasonable, logical decision to conclude that a disputed fact exists based upon another fact which you know to exist.

24.     There are times when different inferences may be drawn from the same facts.  Not all such inferences, though, would be equally fair or reasonable.  It is for you, and you alone, to decide whether to draw any inferences from the evidence you have heard and seen during the trial, and if so, what inferences may reasonably be drawn from that evidence.  You may not use your experience and common sense to fill in or create evidence that does not exist, but you may use them to draw reasonable inferences from proven facts, or to weigh and evaluate the evidence, or lack of evidence, provided during the trial.

3 Sand 74-1

## V.    WITNESS CREDIBILITY

25.     You have now had the opportunity to observe all the witnesses, and it is time for you to decide how believable each witness was in his or her testimony.  Since you are the sole judges of the facts in this case, you must judge the credibility of each witness and the importance of his or his testimony in this case.  In making these judgments, you should carefully scrutinize all of the testimony of each witness, the circumstances under which each witness testified, and any other matter in evidence which may help you decide the truth and importance of each witnessøs testimony.

26.     How are you to appraise or weigh their testimony?  There is no magic formula.  When you walked into this courtroom as jurors, however, you did not leave your common sense, your good judgment, or your experiences in life behind you.  You carried those experiences and common sense with you into the jury box, and you will carry them into the jury room during your deliberations, as well.

27.     Your determination of the credibility – by which I mean the believability – of a witness, very largely depends upon the impression that witness made upon you.  Did the witness's version appear straightforward and candid, or did the witness try to hide some of the facts?  Is there a motive of any kind to testify falsely or to shade the testimony offered?  Everything a witness said or did on the witness stand counts in your determination.  Indeed, often it is not what a person says but how he says it that moves us.  What you should try to do, in other words, is to "size the person up," just as you would do in any important matter when you are undertaking to determine whether or not a person is being truthful, candid and straightforward.

28.     You should consider the opportunity the witness had to see, hear, and know the things about which he testified, the accuracy of his memory, his candor or lack of candor, his intelligence, the reasonableness of his testimony and its consistency.  You should also consider the probability or improbability of the witness's testimony when viewed in the light of all of the other evidence in the case.  The witness's demeanor, his or his relationship, if any, to the dispute or to one or the other of the parties, and any other potential bias or partiality, are also all factors in determining the witness's credibility.  There may be yet additional factors, and you may consider any that you believe bear on the witness's credibility.

29.     If it appears that there is a discrepancy in the evidence, you will have to consider whether the apparent discrepancy may be reconciled by fitting the two stories together.  If that is not possible, you will then have to determine which of the conflicting versions you will accept.  Use common sense and rely on your human experience.

## VII.   IMPEACHMENT

30.     A witness may be discredited, or "impeached," by a showing that at some earlier time the witness said or did something which is inconsistent with the witness's testimony here at trial.  It is for you to determine, first, whether the prior statement or act was indeed inconsistent with the witness's trial testimony, and if so, whether the inconsistency is significant or inconsequential.

31.     If you believe that a witness has been impeached, it is your exclusive province to give the testimony of that witness such credibility or weight, if any, as you may think it deserves.  If you find that the witness made an earlier statement that now conflicts with the testimony that witness gave here at trial, you may accept, in part or in whole, the earlier testimony; you may accept, in part or in whole, the witness's testimony here at trial; or you may reject, in whole or part, both the prior and trial testimony.

32.     In making this determination, you may consider whether the witness purposefully made a false statement now, or previously, or whether it was an innocent mistake; whether the inconsistency concerns an important fact or a small detail; and whether the witness had a credible explanation for the inconsistency.

3 Sand 76-5

33.     Evidence of the prior inconsistent statement was presented to you to help you decide whether to believe the trial testimony of that witness.  It is not to be considered by you as affirmative evidence in determining liability.

3 Sand 76-4, 76-5 (Modified)

## VII.   DISCREPANCIES IN TESTIMONY, AND THE DOCTRINE OF *FALSUS IN UNO*

34.     In considering the evidence presented to you at trial, you may find that there were discrepancies in a witness's testimony.  If you do, that is a proper basis for you to disbelieve that witness.  Such discrepancies, though, or differences between one witness's testimony and another's do not necessarily mean that that witness should be disbelieved completely.  Witnesses sometimes forget things, and even witnesses who are trying to be scrupulously truthful may be nervous or anxious when they testify, and contradict themselves or misspeak unintentionally.  Two people witnessing the same event may also see or hear it quite differently.  That is where your role as the jury comes in; it is your job to judge from both what a witness says, and how he or he appears, his or his testimony should be believed, and how much weight it should be given.

35.     In weighing the significance of a discrepancy in testimony, you may wish to consider whether it relates to an important fact or merely to a trivial detail.  You should always remember, though, that a willful falsehood of any kind is a matter of importance, and should be considered seriously.

36.     If you find that, during the trial, a witness has willfully testified falsely as to a material fact, the law permits you to disregard not only the testimony regarding that fact, but the testimony of that witness in its entirety.  The law allows this on the principle that a person who testifies falsely about one material fact is likely to testify falsely about other facts, and possibly even about everything.  You are not, however, required to disregard all of that witness's testimony.  You may accept as much of the witness's testimony as you feel is true, and disregard as much of it as you feel is false.

## VIII.   INTEREST IN THE OUTCOME AND OTHER BIAS

37.     In evaluating a witness's testimony, you should consider whether he or she has an interest, or lack of interest, in the outcome of the case.  Ms. BROWN and the Defendants, for example, all have interests in how this case is decided.  As parties, they are all interested witnesses.

38.     An interested witness is not necessarily less believable than a disinterested witness, and having an interest does not mean that the witness has not told the truth.  It is for you to decide from the demeanor and testimony of each interested witness on the stand and such other tests as your experience dictates whether or not the testimony has been influenced, intentionally or unintentionally, by his interest.

17

39.     You may, if you consider it proper under all of the circumstances, choose not to believe the testimony of an interested witness, even though it is not otherwise challenged or contradicted.  However, you are not required to reject the testimony of such a witness, and you may accept all, or as much, of his or his testimony as you find reliable, and reject as much as you find unworthy of belief.

3 Sand 76-2 (Modified)

40.     Another thing you should take note of in deciding whether or not to believe a witness, and how much weight to give his or his testimony, is any evidence of hostility or affection which that witness may have toward one side or the other in this case.  Likewise, you should note evidence of any interest or motive which the witness might have to cooperate with, or testify favorably for, one of the parties.  If you find that a witness is biased, you should view his or his testimony with caution, weigh it with care, and consider carefully whether it has been affected by that bias.

41.     For example, you may consider an employment or other business relationship with the Defendant, as well as any other interest a party or witness may have, in determining whether that witness's testimony was in any way influenced by that relationship or interest.  In this case, there has been testimony from several witnesses who were, or who still are employees of the Defendant. The relationship of these witnesses to the Defendant, and the testimony you have heard regarding those relationships may be considered by you in deciding whether their testimony has in any way been influenced by those employment or other relationships.

PJI 1:92

IX.    DEPOSITION TESTIMONY

42.     During the trial, certain testimony has been read to you from transcripts of depositions taken at an earlier stage of the case.  Depositions are examinations of witnesses, under oath, by one or more of the attorneys in the case before trial.  The attorney's questions, and the witness's answers, are recorded by a stenographic reporter.  You should treat a witness's deposition testimony the same as if that testimony had been given live here in court, and weigh and consider it, and judge its credibility, using the same standards you would use with respect to any other evidence.

3 Sand 74-14 (Modified); PJI 1:25

X.    STIPULATIONS OF FACT

43.     If the parties in this case have agreed that certain facts are true.  These are called stipulated facts.  In your deliberations, you must treat these facts as true, and thus as undisputed.

3 Sand 74-4 (Modified)

44.　　If the parties have also agreed upon the admissibility of certain documents, and I have admitted them into evidence on that basis. The fact that they have been admitted by agreement of the parties, however, does not mean that they should be given greater weight, or indeed, any weight, in your deliberations. How much weight, if any, they are to be given remains exclusively your decision.

3 Sand 74-4

## XI.　　HOSTILE ENVIRONMENT DISCRIMINATION

45.　　Title VII makes it unlawful for an employer to discharge an employee, or take any other action which would adversely affect, the employment of an employee on the basis of her gender, sex. Similarly, the New York City Administrative Code prohibits an employer öbecause of the gender, and sexual harassment and to to discriminate against such individual in compensation or in terms, conditions, or privileges of employment.ö

42 U.S.C. §§ 2000e-2(a)(1)-(2) and 2000e(m); N.Y.C. Admin. Code § 8-107(1)(a)

46.　　To prevail on her hostile environment claims, Ms.BROWN must show that: (1) she belongs to a protected group meaning she is a female (2) she was subjected to hostile treatment; (3) the hostile treatment was based on her sex (sexual harassment and gender); (4) the hostile treatment affected a term, condition, or privilege of employment or dissuaded her from seeking her legal right under the law and (5) the Defendant knew or should have known of the hostile treatment in question, and failed to take proper remedial action.

Moylan v. Maries County, 792 F.2d 746, 749 (8th Cir. 1986); Yates v. Avco Corp., 819 F.2d 630, 633 (6th Cir. 1987); Hall v. Gus Const. Co. Inc., 842 F.2d 1010 (8th Cir. 1988): N.Y.C. Admin. Code § 8-107(1)(a); Farrugia v. North Shore Univ. Hosp., 13 Misc. 3d 740, 748-49, 820 N.Y.S.2d 718, 724-25 (Sup. Ct. N.Y. Cty. 2006) *In Burlington Northern & Santa Fe (BNSF) Railway Co. v. White*, 548 U.S. 53 (2006) the Court lowered the bar for employees, and declared that an action is ömaterially adverseö if ö*a reasonable employee would have found the challenged action materially adverse, which in the context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.*ö

47.　　Hostile treatment on the basis of gender and Brown is not limited to conduct that is explicitly sexual in nature. It can also include conduct that demonstrates hostility on the basis of Plaintiff's gender. Conduct or actions that create ödisadvantageous terms or conditions of employment to which members of [a different gender/sex] are not exposedö constitute a hostile work environment.

19

Harris v. Forklift Systems, Inc., 510 U.S. 17, 25, 114 S.Ct. 367, 372 (1993) (Ginsberg, J, concurring); Kopp v. Samaritan Health Sys., 13 F.3d 264 (8th Cir. 1993)

48.     Differential treatment on account of gender, even if it is not obviously based on a characteristic of gender, is called gender  stereotyping, and also violates the equal employment opportunity laws.  If you find that Ms.BROWN has demonstrated that the Defendant created a work environment for his that was hostile toward her by allowing her to be sexually harassed, you may find that the Defendant discriminated against her, in violation of the equal employment opportunity laws.

Price Waterhouse v. Hopkins, 490 U.S. 228, 250-52, 109 S.Ct. 1775 (1989); Back v. Hastings on Hudson Union Free Sch. Dist., 365 F.3d 107, 119-20 (2d Cir. 2004)


49.     If you find that Defendant have indeed neglected to control the work environment and allowed Ms.BROWN to be sexually harassed you may not excuse Defendant from liability for discriminating against Ms.BROWN on the basis of her gender.

Graham v. Long Island R.R., 230 F.3d 34, 43 (2d Cir. 2000)

50.     To prove that she was discriminated against by Defendants, Ms.BROWN need not prove hatred or even dislike.  She need only prove, by a preponderance of the evidence, that there was a difference in treatment, that it was the result of purposeful actions and not accidental, and that her gender was a motivating factor in the treatment ó that is, females are sexually harassed and this is considered gender discrimination.

Goodman v. Lukens Steel Co., 482 U.S. 656, 668-669, 107 S.Ct. 2617, 2625 (1987); Ferrill v. The Parker Group, 168 F.3d 468, 472-473 (11th Cir. 1999)

51.     Under Title VII a hostile work environment exists when the workplace is permeated with discriminatory intimidation, ridicule, and insults that are sufficiently severe or pervasive to alter the conditions of the victimøs employment to create an environment that a reasonable person would find hostile or abusive.  Even a single incident of hostile treatment on the basis of gender or sex may be sufficient to change the conditions of the victimøs employment enough to create a work environment hostile toward the employee on that basis.

Tomka v. Seiler, 66 F.3d 1295, 1305 (2d Cir. 1995); Howley v. Town of Stratford, 217 F.3d 141, 153-154 (2000)

52.     A work environment is changed by the accumulation of abusive conduct, and the resulting harm cannot necessarily be measured by referring to separate and distinct incidents.  You may therefore find that pervasive hostile treatment exists, even in the absence of specific details about specific incidents.  A series of events, including offensive utterances, may be sufficient to establish a

hostile work environment.

> Hathaway v. Runyon, 132 F.3d 1214, 1222 (8th Cir. 1997);  Torres v. Pisano, 116
> F.3d 625, 631 (2d Cir. 1997);  Vinson v. Meritor Savings Bk., 477 U.S. 57, 106 S.Ct.
> 2399, 91 L.Ed.2d 49 (1986)

53.     Under both the federal and New York City laws at issue in this case, it is not necessary
that the offensive conduct or statements with which Defendant have been charged occur in
Ms. BROWNøs presence.  A hostile environment can still exist, or be created, when a victim learns of
the offensive conduct from others.

>  Schwapp v. Town of Avon, 118 F.3d 108, 111 (2d Cir. 1997)

54.     A hostile work environment exists when events, verbal, physical or visual, disrupt the
emotional tranquility of the victim in the workplace by offending or humiliating her.  That is to say,
the conduct weighs heavily on her mind, spirit, or senses, affects her ability to perform her job as
usual, or otherwise interferes with and undermines her personal sense of well being.  The more severe
the conduct, the less frequent or extensive it needs to be for you to find it hostile.  Conversely, the
less severe the conduct, the more pervasive or regular it needs to be for you to find that it is hostile.

> DFEH v. Fresno Hilton Hotels (1984) FEHC Decision No 84-03, pp. 32-33; DFEH v.
> Bee Hive Answering Svc. (1984) FEHC Decision No. 84-16, pp. 18-20; charge in
> Hurley v. Atlantic City Police Dept., 174 F.3d 95 (3d Cir. 1999)

55.     Hostile work environment claims are considered continuing violations because a
hostile work environment claim õis composed of a series of separate acts that collectively constitute
one –unlawful employment practice.

> Collier v. Boymelgreen Developers, 2008 U.S. Dist. LEXIS 25096 *7 (E.D.N.Y.
> Mar. 24, 2008); Cobian v. City of N.Y., 2006 U.S. Dist. LEXIS 3127 *2 (S.D.N.Y.
> Jan. 24, 2006); Cornwell v. Robinson, 23 F.3d 694, 704 (2d Cir. 1994) (continuing
> violation established by same evidence as hostile work environment)

56.     A hostile work environment is not generally a discrete act or event, and thus cannot
generally be said to occur on a particular day.  Rather, it may occur on a series of days, or, as
Ms. BROWN claims in this case, over a period of years.  Hostile work environment claims may also
be based on the cumulative effects of specific acts that may have occurred over a long period of time,
and thus hostile environment claims are said to be õcontinuingö in nature.

> National Railroad Passenger Corp. v. Morgan, 536 U.S. 101, 122 S.Ct. 2061 (2002);
> Fitzgerald v. Henderson, 251 F.2d 345 (2d Cir. 2001); Lambert v. Genesee Hosp., 10

F.3d 46, 53 (2d Cir. 1993); <u>Van Zant v. KLM Royal Dutch Petroleum</u>, 80 F.3d 708, 713 (2d Cir. 1996)

57.     "Whether an environment is hostile or abusive can be determined only by looking at all the circumstances.  These may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or made up of offensive utterances; and whether it unreasonably interferes with an employee's work performance." In determining whether the environment is hostile, you must look at the surrounding circumstances and use your commonsense and sensitivity to determine whether someone in Ms.Brown' position would find the Defendants' conduct to be hostile or abusive.

   <u>Harris v. Forklift Systems</u>, 510 U.S. 17, 23, 114 S.Ct. 367 (1993); <u>Oncale v. Sundowner Offshore Svcs.</u>, 523 U.S. 75, 118 S.Ct. 998 (1998)

58.     The question is not whether any specific incident, by itself, is sufficient to establish a hostile work environment.  Rather, the question is whether all of the incidents, considered together, are sufficient to establish a hostile work environment.

   <u>Accardi v. Superior Ct.</u>, 21 Cal. Rptr 292, 297 (1993)

59.     An employee need not subject himself to an extended period of demeaning and degrading treatment before being entitled to protection under the law.  It is not how long innuendos, slurs, verbal assaults or obnoxious course of conduct last that determines the existence of a cause of action.

   <u>Carrerro v. New York City Housing Auth.</u>, 890 F.2d 569 (2d Cir. 1989); <u>Meritor Savings Bk. v. Vinson</u>, 477 U.S. 57, 106 S.Ct. 2399 (1986)

60.     In determining the question of whether the Defendants' conduct and speech rise to the level of hostile environment discrimination, you must consider only Mr.BROWN' perspective, not the Defendant's.  The law prohibiting discrimination is not concerned with the perpetrator's intent. Employees do not need to establish either the fault or the discriminatory intent of their employers or co-workers to establish a claim of discrimination based on hostile environment.  The law prohibiting discrimination is aimed at the consequence or effects of an employment practice, not at the motivation that inspired the practice.

   <u>Rogers v. EEOC</u>, 454 F.2d 234 (5th Cir. 1971); <u>Harris v. International Paper Co.</u>, 765 F. Supp. 1509 (D. Me. 1991)

61.     In determining whether a hostile work environment existed at the Defendant, you must consider the evidence from the perspective of a reasonable person in the same position.  You must look at the evidence from the perspective of a reasonable person's reaction to a similar environment under similar circumstances.  That is, you must determine whether a reasonable person would have

been offended or harmed by the conduct in question.  You must evaluate the total circumstances and determine whether the alleged harassing behavior could be objectively classified as the kind of behavior that would seriously affect the psychological or emotional well-being of a reasonable person. The reasonable person is simply an average person of normal sensitivity and emotional make-up.

> From charge approved in <u>Hurley v. Atlantic City Police Dept.</u>, 174 F.3d 95 (3d Cir. 1999); <u>Rabidue v. Osceola Refining Co.</u>, 805 F.2d 611 (6th Cir. 1986), cert. denied, 481 U.S. 1041, 107 S.Ct. 1983, 95 L. Ed. 2d 823 (1987); <u>Ellison v. Brady</u>, 924 F.2d 872 (9th Cir. 1991); <u>Harris v. Forklift Systems, Inc.</u>, 517 U.S. 17, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993); <u>Torres v. Pisano</u>, 116 F.3d 625, 632-633 n. 6 (2d Cir. 1997)

62.    Females are likely to have a different perspective as to what constitutes hostile treatment than men do.  As you consider whether the Defendant's actions created a hostile work environment, you should consider whether the work environment would be hostile and offensive to sexually harassed females of reasonable sensibilities who are consciously interested in improving their status in the workplace.

> <u>Andrews v. City of Philadelphia</u>, 895 F.2d 1469 (3d Cir. 1990); <u>Ellison v. Brady</u>, 924 F.2d 872 (9th Cir. 1991); <u>Spencer v. General Electric Co.</u>, 697 F. Supp. 204, 218 (E.D. Va. 1988); <u>Carillo v. Ward</u>, 770 F. Supp. 815 (S.D.N.Y. 1991)

63.    Under Title VII, you must find the Defendants liable for discrimination if you find that a supervisor or partner, or higher, authority over Ms.Brown created a work environment that was hostile toward his on the basis of her gender.

> <u>Faragher v. City of Boca Raton</u>, 524 U.S. 775, 118 S.Ct. 2275, 2292-93 (1998); <u>Burlington Indus. v. Ellerth</u>, 524 U.S. 742, 118 S.Ct. 2257, 2270 (1998); <u>Coates v. Sundor Brands, Inc.</u>, 164 F.3d 1361, 1367 (11th Cir. 1999) (Barkett, J., concurring)

64.    It is "not necessary that those at the highest executive levels receive actual notice before an employer is subject to liability for gender discrimination."  An employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor  (or successively higher) authority over the employee.

> <u>Faragher</u>, *supra*, at 2292-93; <u>Ellerth</u>, *supra*, at 2270

65.    Even if you don't find that the Defendant knew of the sexual harassment or Brown or other misconduct claimed by Ms.BROWN, you may still find the Defendants liable for that hostile environment if you determine that Mr.BROWN's work environment was made hostile toward his on the basis of her gender by an employee who exercised managerial or supervisory authority over her.

> N.Y.C. Admin. Code § 8-107(13)(b)(1)-(3)

66.  **You may also find that the Defendant would be liable for the discriminatory conduct of its non-managerial employees if you find that Defendant knew or should have known of the conduct of those non-managerial employees and failed to prevent or correct it**.

N.Y.C. Admin. Code § 8-107(13)(b)(2)-(3); Farrugia v. North Shore Univ. Hosp., 13 Misc. 3d 740, 749, 820 N.Y.S.2d 718, 725 (Sup. Ct. N.Y.Cty. 2006); Priore v. New York Yankees, 307 A.D.2d 67, 761 N.Y.S.2d 608 (1st Dep't 2003)

67.  In determining whether the circumstances of Ms.BROWN's employment give rise to an inference of discrimination, an inference of Brown, or both, you may consider both direct and circumstantial evidence, including any signs of Defendants' discriminatory attitudes or evidence of comments made by managers or supervisors that reflect bias or stereotyped views.

Desert Palace, Inc. v. Costa, 539 U.S. 90, 98-101, 123 S.Ct. 2148 (2003); Rose v. New York City Bd. of Educ., 257 F.3d 156, 161-62, 163 (2d Cir. 2001); Kirsch v. Fleet Street, Ltd., 148 F.3d 149, 162-164 (2d Cir. 1998); Fields v. New York State Ofc. of Mental Retardation & Developmental Disabilities, 115 F.3d 116, 122 (2d Cir. 1997); Kelber v. Joint Industry Bd. of Elec. Indus., 27 F.3d 42, 47 -48 (2d Cir. 1994); Ostrowski v. Atlantic Mut. Ins. Cos., 968 F.2d 171, 182-183 (2d Cir. 1992); Tyler v. Bethlehem Steel Corp., 958 F.2d 1176, 1186-87 (2d Cir. 1992)

68.  Evidence has been submitted in this case of remarks/incidents made by various of the Defendant's employees, including Ms.BROWN that there was sexual harassment. You may consider these remarks/incidents in deciding whether Defendant had a discriminatory attitude toward Ms.BROWN.

Penta v. Sears Roebuck, Co., 2003 U.S. Dist. LEXIS 26571 (E.D.N.Y. May 12, 2003) ("Even ─stray" remarks in the workplace by persons not involved in the pertinent decision making process ... may suffice to present a prima facie case ... and may indeed persuade the fact finder that the plaintiff has carried his or his ultimate burden of persuasion") (quoting Ostrowski v. Atlantic Mut. Ins. Cos., 968 F.2d 171, 182 (2d Cir. 1992)); Kirschner v. Office of the Comptroller of the City of N.Y., 973 F.2d 88, 92-93 (2d Cir. 1992)

69.  Even if there were only a few minor or mild incidents of biased remarks, you may still infer from them a gender based motivation for Defendants' other adverse employment action's against Mr.BROWN.

Millin v. McClier Corp., 2005 U.S. Dist. LEXIS 2024 (S.D.N.Y. Feb. 4, 2005)

70.  To make out her claim of hostile work environment, Ms.BROWN is not required to

24

show that all the misconduct was directed solely against her. Evidence tending to show hostile or even mere less favorable, treatment of other females or other disabled people is directly relevant to the question whether the Defendant created an environment violative of Title VII.

> Harris, *supra,* 510 U.S. at 23; Leibovitz v. New York City Transit Auth., 252 F.3d 179, 189 (2d Cir. 2001); Cruz v. Coach Stores, Inc., 202 F.3d 560, 570 (2d Cir. 2000); Schwapp v. Town of Avon, 118 F.3d 106, 111 (2d Cir. 1997). Vinson, *supra*, at 146; Jennings v. University of N.C., 482 F.3d 686 (4th Cir. 2007) (treatment of plaintiff's female teammates relevant to determining whether environment was hostile); Spriggs v. Diamond Auto Glass, 242 F.3d 179, 184 (4th Cir. 2001) ("Although [defendant] contends that conduct targeted at person other than [plaintiff] cannot be considered, its position finds no support in the law. We are, after all, concerned with the 'environment' of workplace hostility, and whatever the contours of one's environment, they surely may exceed the individual dynamic between the complainant and his supervisor"); Hicks v. Gates Rubber Co., 833 F.2d 1406, 1415 (10th Cir. 1987) ("One of the critical inquiries in a hostile environment claim must be the environment. Evidence of a general work atmosphere therefore – as well as evidence of specific hostility directed toward the plaintiff – is an important factor . . .")

71. How other female employees were treated at the Defendants company is centrally important in determining whether the workplace was indeed hostile not merely toward Mr.BROWN, but toward females at the defendant generally.

> Vinson v. Taylor, 753 F.2d 141, 146 n. 40 (D.C. Cir. 1985), *aff'd sub nom.* Meritor Savings Bk. v. Vinson, 477 U.S. 57, 106 S.Ct. 2399 (1986)

72. An epithet need not have been directed specifically at Ms.BROWN in order to have contributed to a work environment that was hostile toward her. The mere fact that she might not have been present when a derogatory comment was made to, or about, her, or about other employees at DEFENDANTS does not make that comment irrelevant to her hostile work environment claim, either. If Mr.BROWN learned second-hand of a derogatory comment or joke by a fellow employee or supervisor, that may have had an effect on his work environment. Such conduct, "if part of a pervasive or continuing pattern of conduct," may tend to show the existence of a hostile environment. In light of such incidents, for example, the incidents Ms.BROWN experienced more directly may have been more likely to have been perceived as hostile or abusive.

> Schwapp, *supra*, at 111-12; Leibovitz, *supra,* at 190; Torres v. Pisano, 116 F.3d 625, 633 (2d Cir.), *cert. denied,* 522 U.S. 997, 118 S.Ct. 563 (1997); Perry v. Ethan Allen, Inc., 115 F.3d 143 (2d Cir. 1997) (evidence of harassment of other females, if part of pervasive or continuing pattern of conduct, "surely relevant" to show hostile environment, and could be probative of employer's notice thereof)

25

73.    A plaintiff's awareness of other matters "could very well be relevant to her reasonable perception of a hostile work environment."

Schwapp, *supra*

74.    Ms.Brown was not required to file a formal complaint to invoke the anti-discrimination laws, and she also was not required to use any "magic words" to do so.

Cruz v. Coach Stores, Inc., 202 F.3d 560, 566 (2d Cir. 2000) (formal complaint unnecessary to invoke anti-discrimination laws); Ramos v. City of New York, 1997 U.S. Dist. LEXIS 10538  7 (S.D.N.Y. Jul. 21, 1997) (no "magic words" required)

75.    Ms.BROWN is also excused from having to have made complaints about discrimination or Brown she experienced or witnessed if you find that such complaints would have been futile, or would have led to Brown, or further Brown, against her and or she was in fear of losing her job.

Perdomo-Rosa v. Corning Cable Sys., 2006 U.S. Dist. LEXIS 15852 *4-5 (D. P.R. Mar. 15, 2006); Young v. R.R. Morrison & Son, Inc., 159 F. Supp. 2d 921, 926-27 (N.D. Miss. 2000) (fear of reprisal sufficient to defeat affirmative defense if substantiated & based upon objective evidence such as "evidence of prior unresponsive action by the company or management to actual complaints")

1991)

## XII.    DIFFERENCES BETWEEN TITLE VII (also 42 U.S.C. 1981) AND THE NYCHRL

### A.    The HRL Is Intended to Be More Protective Than Title VII

76.    The sets of laws under which Ms.BROWN has brought discrimination and Brown claims in this case are not the same.  The New York City Human Rights Law was intended to be even *more* protective of employee rights than Title VII or 42 U.S.C. 1981.

Farrugia v. North Shore Univ. Hosp., 13 Misc. 3d 740, 747, 820 N.Y.S.2d 718 (Sup. Ct. N.Y. Cty. 2006) (emphasis added).  N.Y.C. Admin. Code § 8-130.  Williams v. New York City Housing Auth., 2009 N.Y. Slip Op. 440, 872 N.Y.S.2d 27, 32 (App. Div. 1st Dep't 2009).  Jordan v. Bates Adver. Holdings, Inc., 11 Misc. 3d 764, 770, 816 N.Y.S.2d 310 (Sup. Ct. N.Y. Cty. 2006); Hanna v. New York Hotel Trades Council, etc., 18 Misc. 3d 436, 438, 851 N.Y.S.2d 818, 822 (Sup. Ct. N.Y. Cty. 2007) ("The Court notes New York City Council policy that NYCHRL is to be liberally and independently construed with the aim of making it more protective than its federal (Title VII of the Civil Rights Act of 1964) . . . counterpart. . . .").; Krist v.

26

OppenheimerFunds, Inc., 18 Misc. 3d 1111A, 856 N.Y.S.2d 498 (Sup. Ct. N.Y. Cty. 2007) ("NYCHRL § 8-107, *et seq.,* as amended by the Local Civil Rights Restoration Act of 2005, is required to be construed liberally"); Selmanovic, *supra,* at *10-11 (interpreted more broadly than its state and federal counterparts); Dybdal v. Variable Annuity Life Ins. Co., 2007 U.S. Dist. LEXIS 85106 *16-17 (E.D.N.Y. Nov. 19, 2007) ("more deferential analytical framework than those brought under Title VII"); Farrugia, *supra,* at 748, 820 N.Y.S.2d at 724 ("more protective than the state and federal counterpart"). Sorrenti v. City of N.Y., 17 Misc. 3d 1102A, 851 N.Y.S.2d 61 (Sup. Ct. N.Y. Cty. 2007); Ochei v. Coler/Goldwater Mem. Hosp., 450 F. Supp. 2d 275, 282-83 (S.D.N.Y. 2006); Hart v. Dresdner Kleinwort Wasserstein Securities, LLC, 2006 U.S. Dist. LEXIS 56710 *27 (S.D.N.Y. Aug. 8, 2006) ("legislature's preference for courts to interpret the New York City Human Rights Law expansively"); Yanai v. Columbia Univ., 2006 N.Y. Misc. LEXIS 2407 *5-6 (Sup. Ct., N.Y. Cty. July 11, 2006).

B.      "Severe or Pervasive" Is *Not* the Standard Under the HRL

77.     Whereas, under Title VII, hostile treatment on the basis of gender (sexual harassment) must be "severe or pervasive" before you may find the Defendant liable, under the City's law, "severe or pervasive" is not the standard.  Even a single instance of discrimination is sufficient to find a violation.

Farrugia, *supra,* at 748-49, 820 N.Y.S.2d at 724; Selmanovic, *supra,* at *11; Ochei, *supra;* Pugliese v. Long Island R.R. Co., 2006 U.S. Dist. LEXIS 66936 *37-38 (E.D.N.Y. Sep. 19, 2006))

78.     Under the City Law, questions of "severity" and "pervasiveness" are applicable to consideration of damages, but *not* to the question of liability. If you determine that the defendant's behavior be said to fall within the broad range of conduct that falls between severe and pervasive on the one hand and a petty slight or trivial inconvenience on the other, you must find for Plaintiff.

Williams, *supra,* at **28 (emphasis added)

C.      There Is No *Faragher/Ellerth* Defense Under the HRL
(If an instruction is given regarding the F-E defense under Title VII)

79.     Also, under the New York City Human Rights Law, the defendant is strictly liable for the harassing or hostile acts of any of its supervisors.  Strictly liable means that DEFENDANT is liable for such acts whether or not you find that it was aware of the supervisor's conduct.

HRL Section 8-107(13)(b)(1); *Legislative Annual,* at 187 (N.Y.S. Legislative Svc., Inc. 1991) ("[s]trict liability in employment context for acts of managers and supervisors . . .")

80.     DEFENDANT is also liable for the acts of managerial and supervisory employees even if you find that it exercised reasonable care to prevent and correct any discriminatory actions, and even if you find that Ms.BROWN unreasonably failed to take advantage of the corrective opportunities which it might have made available to him.  The New York City Law also makes DEFENDANT liable for the discriminatory acts of Ms.BROWNøco-workers as long as a managerial or supervisory employee knew of, and acquiesced in, such conduct, or should have known of what was going on and failed to take reasonable preventive measures.

Zakrzewska v. The New School, 2009 U.S. Dist. LEXIS 5183 *21-22 (S.D.N.Y. Jan. 26, 2009) (emphasis added); Pugliese, supra; Okayama v. Kintetsu World Exp., 2008 N.Y. Slip Op. 31691U, 2008 N.Y. Misc. LEXIS 7401 (Sup. Ct. N.Y. Cty. June 12, 2008) (Faragher/Ellerth defense not applicable to claims brought pursuant to § 8-107(13)(b)(1))

XIII.   DAMAGES GENERALLY

81.     Ms.BROWN does not need to establish any specific loss of salary, wages or other benefits in order to establish a claim for hostile work environment.

Burlington Industries v. Ellerth, 524 U.S. 742, 118 S.Ct. 2257 (1998)

82.     I remind you that the fact that I will charge you as to damages is not an inference that you must bring in a verdict in Ms.BROWNøfavor.  It is for you to decide on the evidence presented and the rules of law that I have given you whether Ms.BROWN is entitled to recover from the Defendant.  If you decide that Ms.BROWN is not entitled to recover from the Defendant, you need not consider damages.  Only if you decide that Mr.BROWN is entitled to recover will you consider the measure of damages. I am instructing you on damages only so that you will have guidance should you decide that Ms.BROWN is entitled to recovery.

83.     If you do find that Ms.BROWN is entitled to recover from the Defendant, you must render a verdict in a sum of money that will justly and fairly compensate, or make whole, Ms.BROWN for all the losses resulting from the injuries he sustained.

PJI 2:227

84.     The purpose of the law is to make the plaintiff whole if she proves one or more of her claims, to put her in the position she would have been in if there had been no discrimination or Brown. Generally speaking, a person who is a victim of illegal discrimination  is entitled to be restored to the position she would have had but for the discrimination.

## XIV.   COMPENSATORY DAMAGES

85.   The purpose of the law of damages is to award, as far as possible, just and fair compensation for any loss that resulted from the Defendant's violation of Ms.BROWN's rights.  If you find that the Defendant is liable on any of Ms.BROWN's claims, as I have explained them, then you must award her sufficient damages to compensate for any injury she suffered as a result of the Defendant's wrongdoing.

86.   Compensatory damages can be inferred from the circumstances presented to you by the evidence, or they can be proven by testimony going solely to the issue of damages.  They are not limited merely to the expenses that Ms.BROWN may have incurred.

Devitt, Blackmar and Wolff, *Federal Jury Practice and Instructions*, §§ 104.05, 104.06, 104A.11 (1987 & Supp. 1993)

87.   Compensatory damages also include damages for the future pecuniary or monetary losses, emotional pain and suffering, mental anguish, humiliation, indignity, embarrassment, emotional distress, shock, discomfort, inconvenience and loss of enjoyment of life that you may find she has suffered as a result of the Defendant's unlawful conduct.   The words "embarrassment" and "humiliation" are used in their everyday meaning.  Embarrassment and humiliation are compensable when a reasonable person with ordinary sensibilities under the same or similar circumstances would be embarrassed or humiliated.

88.   If you decide to award compensatory damages, you must be guided by dispassionate common sense.  Computing damages may be difficult, but you must not let that difficulty lead you to engage in arbitrary guesswork.  On the other hand, the law does not require Ms.BROWN to prove any expense, lost earnings or other measurable damages in order for her to receive compensation for mental suffering, although you may find that she has in fact done so.  The law also does not require her to prove the amount of any such losses with mathematical precision.  She only needs to do so with as much definiteness and accuracy as the circumstances permit. There is also no requirement that a claim of emotional distress be supported by evidence from a medical or mental health professional who treated Ms.BROWN, or indeed, by the testimony of any witness.  The damages that you award must simply be fair and reasonable, neither inadequate nor excessive.

3 Sand 77-3; Story Parchment Co. v. Paterson Parchment Paper Co., 282 U.S. 555, 51 S.Ct. 248, 75 L.Ed. 544 (1931); *Black's Law Dictionary* 1103 (5th ed. 1979); New York City Transit Auth. v. State Div. of Human Rights, 78 N.Y.2d 207, 216, 577 N.E.2d 40, 573 N.Y.S.2d 49, 54 (1991), *on remand*, 181 A.D.2d 891, 581 N.Y.S.2d 426 (2d Dep't 1992); Schulman v. Group Health Inc., 39 A.D.3d 223, 225, 833 N.Y.S.2d 62, 64 (1st Dep't 2007); Sogg v. American Airlines, Inc., 193 A.D.2d 153, 163, 603 N.Y.S.2d 21, 27 (1st Dep't 1993), *app. denied,* 83 N.Y.2d 754, 612 N.Y.S.2d 109 (1994); McIntyre v. Manhattan Ford, 256 A.D.2d 269, 682 N.Y.S.2d

167 (1st Dep⊘t 1998); <u>Walsh v. Covenant Hse.</u>, 244 A.D.2d 214, 664 N.Y.S.2d 282 (1st Dep⊘t 1997); <u>Bracker v. Cohen</u>, 204 A.D.2d 115, 612 N.Y.S.2d 113 (1st Dep⊘t 1994); <u>Boodram v. Brooklyn Dev. Ctr.</u>, 2003 N.Y. Misc. LEXIS 1582 (Civ. Ct. N.Y. Cty. 2003) (collecting cases and recognizing award for future lost earnings and future emotional distress); T.P.I. - Civil 11.75, *Embarrassment and Humiliation*; <u>Harman v. Moore⊘s Quality Snack Foods</u>, 815 S.W.2d 519 (Tenn. App. 1991)

89.     Even if you believe that Ms.BROWN is unusually emotionally sensitive and incurred greater emotional harm from the Defendant⊘s discriminatory conduct than the harm that would have been suffered by an average person, the Defendant are responsible for this additional harm.

<u>Williamson v. Handy Button Mach. Co.</u>, 817 F.2d 1290, 1294 (7th Cir. 1987)

90.     When considering the amount of monetary damages to which Ms.BROWN may be entitled, you should consider the nature, character, and seriousness of any inconvenience, and/or humiliation he felt. You must also consider its extent or duration, as any award you make must cover the damages endured by Ms.BROWN since the wrongdoing, to the present time, and even into the future if you find as fact that the proofs presented justify the conclusion that his humiliation and/or inconvenience have continued to the present time or can reasonably be expected to continue in the future.

<u>Bolden v. SEPTA</u>, 21 F.3d 29, 33-35 (3d Cir. 1994)

XVI.   <u>PROXIMATE CAUSE</u>

91.     You may award compensatory damages for all of the injuries that Ms.BROWN proves were proximately caused by the Defendant⊘s unlawful conduct.  Injuries are proximately caused by an act, or a failure to act, whenever it appears from a preponderance of the evidence in the case that the act or omission played a substantial part in bringing about or actually causing the injury or damage; and that the injury or damage was either a direct result or a reasonably probable consequence to the act or omission.

XVII.  <u>TAX GROSS-UP</u>

136     When determining the amount in damages to award to Ms.BROWN, you may also consider the fact that she will be obligated to pay taxes on the damages award, and those taxes will likely be higher because she receives the total amount of your award in a single year, rather than spread out over whatever number of years you determine he should be compensated for. You may therefore consider adjusting his award to compensate his for this additional tax burden.

<u>Wagner v. Nestle USA Inc.</u>, No. CV-359020, Ohio Court of Common Pleas,

30

Cuyahoga County; <u>Sears v. Atchison, Topeka & Santa Fe Ry. Co.</u>, 749 F.2d 1451
(10th Cir. 1984) (allowing an increase in award for back pay to compensate for
resultant tax burden from receiving a lump sum of more than 17 years in back pay);
<u>Arneson v. Callahan</u>, 128 F.3d 1243, 1247 (8th Cir. 1997) (recognizing possibility
that tax enhancement damages may be available in Title VII cases); <u>McElroy v. State</u>,
703 N.W.2d 385, 393 (Iowa 2005) (distinguishing Title VII from the Federal
Employers Liability Act, which the Supreme Court interpreted in <u>Norfolk W. Ry. v.
Liepelt</u>, 444 U.S. 490, 100 S.Ct. 755 (1980), to find that a jury instruction on taxation
of damage award was inappropriate); <u>Blaney v. Int'l Ass'n of Machinists &
Aerospace Workers</u>, 14 Wash. App. 80, 55 P.3d 1208 (Wash. Ct. App. 2002); <u>Gelof
v. Papineau</u>, 829 F.2d 452 (3d Cir. 1987) (allowing damages to compensate plaintiff
for increased tax burden caused because of a single lump sum award); <u>Cooper v.
Paychex, Inc.</u>, 960 F. Supp. 966, 975 (E.D. Va. 1997) (citing <u>Gelof</u> and <u>Sears</u> with
approval); <u>EEOC v. Joe's Stone Crab, Inc.</u>, 15 F. Supp. 2d 1364 (S.D. Fla. 1998)
(citing Sears with approval but holding that such a tax bump required a sufficient
evidentiary foundation); <u>May v. Automated Data Mgmt., Inc.</u>, 1989 U.S. Dist. LEXIS
10760 (D.D.C. 1989) (holding that Sears applied to protracted litigation and that
sufficient evidence was required to establish the tax penalty); <u>Jordan v. CCH, Inc.</u>,
230 F. Supp. 603 (E.D. Pa. 2002); <u>O'Neill v. Sears Roebuck & Co.</u>, 108 F. Supp. 2d
443 (E.D. Pa. 2000); <u>Starceski v. Westinghouse Elec. Corp.</u>, 54 F.3d 1089 (3d Cir.
1995)

137     For this purpose, I instruct you that the applicable federal 2013 tax rate schedules
presently provide as follows:

- **10%** on taxable income from $0 to $8,925, plus
- **15%** on taxable income over $8,925 to $36,250, plus
- **25%** on taxable income over $36,250 to $87,850, plus
- **28%** on taxable income over $87,850 to $183,250, plus
- **33%** on taxable income over $183,250 to $398,350, plus
- **35%** on taxable income over $398,350 to $400,000, plus
- **39.6%** on taxable income over $400,000.

F§104(a); 2009 Tax Rate Schedules, available online at http://www.irs.gov/]

XVIII. <u>DELIBERATIONS</u>

138     You will now retire to decide the case. A unanimous verdict is necessary.  It is your duty as jurors to consult with one another, and to deliberate with a view to reaching an agreement. Each of you must decide the case for him/herself, but you should do so only after a consideration of the case with your fellow jurors.  You are not bound to surrender your honest convictions concerning the effect or weight of the evidence for the mere purpose of returning a unanimous verdict, or solely because of the opinion of other jurors, but you should not hesitate to change your opinion if you become convinced that it is erroneous.   Discuss and weigh your respective opinions with your fellow jurors dispassionately, without regard to sympathy, prejudice or favor for either party, and adopt that conclusion which, in your good conscience, appears to be in accordance with the truth. Remember that you are the sole judges of the facts in this case.

139     You are not to ask anyone else about the law, or consider or accept any advice about the law from anyone besides me.  You may not draw any inference from an unanswered question, nor consider testimony which has been stricken from the record.  You are also prohibited from referring to dictionaries or other, similar guides or reference materials to assist you in understanding legal words or phrases.  Where the jury instructions given to you provide a definition of a word or phrase, you are to confine your deliberations to the definitions provided within such jury instructions.  If you do not understand an instruction, or a word, please have your foreperson make a written request to have it explained, and you will be brought back into the courtroom so that I may do so.

140     There is no magic formula in deciding how much weight to give to any particular document, or the testimony of any particular witness.  The judgment you use in your everyday affairs to decide the reliability or unreliability of statements made to you by others is the same judgment you should apply in your deliberations in this case.  You should not determine the weight of evidence by the number of witnesses who testified to a particular fact, but rather by your judgment as to the quality and credibility of the testimony about that fact.  You may find that the testimony of a small number of witnesses as to a fact is more credible than the testimony of a larger number of witnesses to the contrary.

    1 Sand 7-1 (Modified); 3 Sand 76-1 (Modified); Fifth Circuit Pattern Jury Instructions
    No. 4 (1983) (Last paragraph)

141     Also, the law does not require the parties to produce as exhibits every document mentioned in the evidence in the case.  It also doesn't require the parties to call as witnesses all persons who may have been present at a particular time or place involved in the case, or who may appear to have some knowledge of the matters in issue at this trial. In fact, I may have limited the number of witnesses each party could call to testify.

    3 Devitt § 73.01; 3 Sand 76-4

142     In determining the weight you will give to the testimony of the witnesses you heard testify in this case, you should consider the interest, or the lack of interest, the witness has in the outcome of this case; any other bias or prejudice the witness might have; and the age, demeanor, and

manner the witness exhibited as he or he testified.  You should also consider the opportunity that the witness had to observe the facts about which he or he testified; the probability or improbability of the witness's testimony when considered in light of all the other evidence in the case; and any other aspect of the witness's testimony, or conduct while testifying, which you find to be important.

## XIX.   JUROR OATH

143      In determining the facts in this case, I remind you that you took an oath to render judgment impartially and fairly, without prejudice or sympathy and without fear, solely upon the evidence in the case and the applicable law.  I know that you will do this and reach a just and true verdict.

## XX.   SELECTION OF FOREPERSON

144      When you retire, you should elect one member of the jury as your foreperson.  That person will preside over the deliberations, and speak for you here in the courtroom.  In all other respects, however, he or he will be treated simply as one of you.

## XXI.   PROPER, AND IMPROPER, CONSIDERATIONS

145      Your verdict must be based solely upon the evidence, or lack of evidence, as you have heard and observed it during this trial.  It would be improper for you to consider any personal feelings you may have about the parties, their race, religion, national origin, Hispanic race and national origin, or age.  It would be equally improper for you to allow any feelings you might have about the nature of the claim against the Defendant to influence you in any way.  The parties in this case are entitled to a trial free from bias or prejudice.  You must therefore make a fair and impartial decision so that you will arrive at the just verdict.

## XXII.   USE OF PROFESSIONAL EXPERTISE

146      Although as jurors you are encouraged to use all of your life experiences in analyzing testimony in reaching a fair verdict, you may not communicate any personal professional expertise you might have, or other facts not in evidence, to the other jurors during the deliberations.  You may not consider or speculate on matters not in evidence or matters outside the case, but rather must base your discussions and decisions solely upon the evidence presented to you during the trial.

## XXIII. COMMUNICATIONS WITH THE COURT DURING DELIBERATIONS

147      If, during your deliberations, you wish to see any of the exhibits again, you may request that they be brought to you in the jury room.  If you wish to hear any of the testimony again, you may request that it be read to you, and you will be brought back into the courtroom for that purpose. Please remember that it is not always easy to locate what you might want, so be as specific as you possibly can if you request an exhibit, or a portion of a witness's testimony.

33

148    Any request for an exhibit, or for the reading of testimony,  in fact any communication with me at all, must be made in writing, and must be signed by your foreperson and given to the marshal who will be waiting outside the jury room throughout your deliberations.  None of you should attempt to communicate with me in any other way.  Please also remember that you are not to reveal to me, or anyone else, how you, or the rest of the jury, stands on any of the questions before you until after you have reached a final verdict.

## XXIV. RETURN OF VERDICT

149    After you have reached a verdict, your foreperson will fill in the form that has been given to you, sign and date it, and advise the marshal outside your door that you are ready to return to the courtroom.  I must stress that all of you must be in agreement with the verdict which is announced in court, so you should not advise the marshal that you are ready to return to the courtroom until you are all in agreement.  Once your verdict is announced by your foreperson in the courtroom and officially recorded, it cannot ordinarily be changed or revoked.

## XXV.  SPECIAL VERDICT FORM

150    A special verdict form has been prepared for you to use in recording your decision on each of the questions in this case.  Each question is generally to be answered "yes" or "no", and all of you must be unanimous in the answer you give to each question.

## XXVI. CONTINUING VIOLATION

151. You have to note that The "continuing violation" doctrine overrides the statute of limitations. This is an exception to the statute of limitations which sets the maximum period which one can wait before filing a lawsuit. For example an employee who suffers from recurring acts of abusive conduct may be unable to recognize the true character and enormity of the discriminatory harassment until after it has continued for an appreciable period of time. Therefore the employee can bring action on any one of the hostile acts extending over a period of time as a new cause of action arises in each case. The continuing violations doctrine, which typically arises in the context of employment discrimination, permits employees to recover for discriminatory acts, such as harassment or promotion denials, that fall outside the limitations period, as long as part of a "continuing violation" is within the period. *National Railroad Passenger Corp. ("Amtrak") v. Morgan,* 122 S. Ct. 2061 (2002) Therefore, if you find that the last harassment, discrimination or Brown falls within the statue of limitations period, you  must consider all of the harassment, discrimination and Brown even though all other incidents falls outside the statue of limitations period.

34

Dated: New York, New York
        November 13, 2013

                                Respectfully submitted,


                                _____\s_____
                                Ismail S. Sekendiz, Esq (IS-0509)
                                SEKENDIZ LAW FIRM P.C.
                                Attorney for Plaintiff
                                45 Broadway Suite: 2650
                                New York, New York 10006
                                Tel: (212) 380-8087